BEAM, Circuit Judge,
dissenting.
I suggest that the court’s opinion may be appropriately morphologized by the expression “no good deed goes unpunished.” [10] Believing this should not be true, I respectfully dissent.
At the request of Evelyn Soles, personal representative of the Estate of Patrick J. Hollander, made through her attorney, William I. Diggs, now the stakeholder of part of the proceeds of a substantial tort settlement, the employees of Wal-Mart acting through an administrator of their ERISA benefit plan, performed a good deed by agreeing to accept partial payment of a subrogation claim from a portion of the monies derived through a modest settlement with one of several potential tortfeasors. Quoting only a part of the letter of request from attorney Diggs to Wal-Mart, dated January 16, 1997, the court now holds that the letter and Wal-Mart’s act of acceptance triggered the running of the five-year statute of limitation that clearly applies in this action. With this result, I disagree. And, in my view, the portion of the above-mentioned letter *787 not quoted or discussed in the court’s opinion illustrates the error.
Two separate settlements occurred in this case. The first settlement, set forth in the January 16 letter, involved James Todd, II, the driver of the first vehicle that struck Mr. Hollander. The second settlement, consummated on May 17, 2000, involved the operator of the second car that struck Mr. Hollander and two liquor-dispensing establishments.
The January 16, 1997, letter stated in greater part as follows:
Survival action proceeds are typically generated when a deceased is not killed instantly but rather experiences conscious pain and suffering prior to death. While we have no evidence that indicates Mr. Hollander suffered conscious pain and suffering, we have nevertheless agreed to allocate Ten Thousand and No/100s ($10,000.00) Dollars [of the $100,000 settlement] to the survival claim. This is in keeping with our view of South Carolina case law with respect to the issue of fund allocation. We did this to insure that there was some fund which could begin to satisfy claims against Mr. Hollander’s estate including the subrogation interest of Wal-Mart.
As an employee of Wal-Mart in Myrtle Beach, South Carolina, Mr. Hollander received the generous benefits from the plans which have been established by Wal-Mart and which are governed by the provisions of ERISA. We would ask that you agree that Wal-Mart has no subrogation claim against any monies which are allocated for receipt by Mr. Hollander’s statutory beneficiaries as a result of their wrongful death claim, and that Wal-Mart’s rightful interest in this case lies against the assets of the estate of Patrick Hollander which include the $10,000.00 fund allocated as a result of the survival action which we have maintained on his behalf.
Your acknowledgment in this regard will enable us to conclude this portion of the case and allow for the distribution of proceeds to Mr. Hollander’s daughter. Of course, a Conservator or Guardian will be appointed on behalf of the minor child to receive these monies for her. This is a position which is required and regulated by South Carolina law and which must be bonded.
Joint Appendix at 57-58 (emphasis added). It is obvious that this letter and the resultant agreement by Wal-Mart directed itself only to “this portion of the case.” In other words, this particular settlement arrangement involved only Mr. Todd’s liability and the apportionment requested by personal representative Soles (who asserted both a wrongful death and survival claim) and approved by the South Carolina court. While it is possible that Mr. Diggs’ analysis of the availability of the “wrongful death” proceeds to the satisfaction of the subrogation claim was wrong, Wal-Mart had no immediate duty to institute litigation against these wrongful death funds from this particular tortfeasor and was certainly not precluded from voluntarily accepting the $10,000 payment and proceeding against monies later generated from other, unrelated (and perhaps unknown at the time) tortfeasors. Indeed, Mr. Diggs’ letter referred only to Wal-Mart’s ERISA plan (contract) rights in the Todd money not the later negotiated funds from the additional parties.
It is highly probable, however, that attorney Diggs was correct that under South Carolina and Fourth Circuit precedent, the $90,000 in wrongful death proceeds, as approved by the court, were properly alloca-ble only to the statutory beneficiaries and were not available to satisfy the ERISA claim, Liberty Corp. v. NCNB National *788 Bank of South Carolina, 984 F.2d 1383, 1388-89 (4th Cir.1993), although the court’s decision implies a contrary conclusion without any discussion of the matter. Unless Wal-Mart had the right and, thus, the duty to proceed to collect its subrogation claim against the $90,000 allocated by the court to the wrongful death claim in January of 1997,which right and duty Wal-Mart did not have under the holding in Liberty Corp.,[11] the letter of January 16 could have triggered nothing by way of commencement of the running of a statute of limitations.
The settlement of May 17, 2000, is a different story. The court order approving this settlement states, in part:
... Kristen Hollander, is the decedent’s only surviving heir, that she is the statutory beneficiary under S.C.Code Ann. § 15-61-20 (Supp.1998), and that she is entitled to any damages recovered thereunder for the wrongful death of Decedent. It appears further that S.C.Code Ann. § 15-51-40 (Supp.1998) provides that any damages recovered for the wrongful death of a decedent would be distributed to surviving issue according to the laws of intestacy of this State as set forth in S.C.Code Ann. § 62-2-102 (1987) and § 62-2-103 (1987).
It appears further that Decedent died intestate and that any damages recovered for any conscious pain and suffering of Decedent, pursuant to S.C.Code Ann. § 15-5-90 (1976), would likewise be distributed according to the laws of intestacy. Said damages are a probate asset of the Decedent’s estate, must be administered as such by the personal representative and cannot be disbursed without bond being posted or prior written authorization of this Court.
After proper and necessary inquiry, the results of which are set forth herein above, and examination of Petitioner’s Petition, this Court is of the opinion that the proposed settlement agreement set forth in the Petition for Approval of Wrongful Death and Survival Claim Settlement should be approved and that this Court has the authority to approve said settlement pursuant to the provisions of S.C.Code Ann. § 15-51-42 (Supp.1998).
Now, therefore, it is hereby ORDERED that Evelyn Soles, as Personal Representative of the Estate of Patrick Hollander, be and hereby is authorized to accept from Jamie Lee Hucks Burroughs, Myrtle Beach Food Systems, Inc., and NYP Corp., or other entities on their behalf, the sum of One Hundred Thirty Thousand and No/100 ($130,-000.00) Dollars now and future periodic payments in the name of Kristen Hollander with an expected value guaranteed value of Seven Hundred Sixty-nine Thousand Five Hundred Eighty-four and 02/100 ($769,584.20) [sic] Dollars and expected benefits total One Million One Hundred Fifty-three Thousand Seven Hundred Fifty-seven and No/100 ($1,153,757.00) Dollars as settlement in full of any and all liability for any claims, hens, causes of action, settlements, judgments or the like that said Personal Representative of the Estate of Patrick Hollander has or might have at some time ... arising out of the motor vehicle collision that occurred on April 25, 1996, including, but not limited to, all claims, hens, actions, causes of action, judgments or the like for the wrongful death and any conscious pain and suffering of Decedent and that Petitioner was, is and *789 shall be responsible for the proper distribution of the aforementioned proceeds among the wrongful death and survival claim beneficiaries in accordance with law and those persons and entities protected by the contemplated covenant not to sue and policy release are relieved and discharged from liability with respect to the proper distribution of the aforementioned proceeds. The proceeds that are recovered for conscious pain and suffering are a probate asset of the Decedent’s estate, must be administered as such by the personal representative and cannot be disbursed without bond being posted or prior written authorization of this Court. Furthermore, no disbursement of either the wrongful death or conscious pain and suffering proceeds shall be made by Evelyn Soles, as Personal Representative of the Estate of Patrick Hollander, to or for the benefit of Kristen Hollander without first complying with S.C.Code Ann. §§ 62-5-431 and -432 (1987).
Joint Appendix at 109-112 (emphasis added). Thus, this settlement, but not the first settlement, provided funds to fully satisfy the balance of Wal-Mart’s subrogation interest. The South Carolina court’s apportionment of the proceeds of this second settlement brings the Wal-Mart claim squarely within McInnis v. Provident Life & Accident Insurance Co., 21 F.3d 586 (4th Cir.1994). Under Mclnnis, the ERISA rights inquiry is directed at “whose damage claim is at issue” in the settlement. Id. at 589. Here, as in Mcln-nis, “the damages recovered as settlement [as noted in the court order] clearly included those belonging to [the wrongful death beneficiary] and [the estate].” Id. at 590. Accordingly, under Mclnnis, Wal-Mart is entitled to recover its subrogation claim from the fruits of the second settlement and if this result conflicts with South Carolina wrongful death law, state law is preempted by ERISA. Id. Thus, Ms. Soles and Mr. Diggs’ refusal to pay Wal-Mart’s claim after the second settlement gives Wal-Mart a cause of action commencing on May 17, 2000, providing a time frame well within the applicable statute of limitations. The dismissal of the action on limitations grounds is error.
Accordingly, I dissent.

. Clare Booth Luce, in H. Faber, The Book of Laws, 1980.

. Although Liberty Corp. involved North Carolina law, I find no material difference between the applicable North Carolina and South Carolina statutes.